

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **BRADLEY BEARDEN,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD82425** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **February 18, 2020** |
| **MISSOURI VALLEY COLLEGE, ET AL.,** | ) | |
| | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Saline County, Missouri**
The Honorable Dennis A. Rolf, Judge

Before Special Division: Zel M. Fischer, Special Judge, Presiding, Cynthia L. Martin, Judge and Gary D. Witt, Judge

Bradley Bearden ("Bearden") appeals from the partial summary judgment of the Circuit Court of Saline County in favor of Missouri Valley College ("MVC") finding that there were no genuine issues of material fact and that MVC did not owe a duty to Bearden under the circumstances as alleged and that MVC did not directly or indirectly cause Bearden's damages. We dismiss the appeal.

## Factual Background[1]

On October 6, 2010, Bearden was a 20-year-old student at MVC, and he sought admission into the Tau Kappa Epsilon fraternity ("TKE"). To gain admission into TKE, Bearden was required to attend TKE's "Big Brother Night," which was an initiation ritual. The initiation began on campus where pledges "elephant walked"[2] through campus and performed various other tasks. Afterward, pledges were driven to Indian Foothills Park ("Park"), which is five to ten minutes from campus. Each pledge had a "Big Brother" who was an active member of the fraternity. At some point after they arrived at the Park, each pledge was given a "family drink" from their Big Brother. Bearden was given a bottle of Ten High whiskey as his family drink. Members and pledges chanted, "chug, chug, chug" to pressure Bearden to drink the whiskey, and he consumed the entire bottle. Pledges were initiated as members of the fraternity at this ceremony.

In the early morning of October 7, 2010, Bearden and the other members of the fraternity came back onto campus to TKE's chapter room. Bearden was in an intoxicated condition. The chapter room is located in George Mack Hall, which is a dormitory for students and owned by MVC. In the chapter room, Bearden and other members of the fraternity continued to drink alcohol for several hours after the initiation ceremony had ended. At approximately, 3:00 a.m., Bearden stood up from where he sat on the sofa and

---

[1] "When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

[2] During the "elephant walk," pledges walked in a line, put one hand between their legs, and held the hand of the person in front of and behind them. Pledges made funny noises as they walked through campus.

was shoved from behind by an unknown person, presumably a member of the fraternity.[3] Bearden fell onto a broken ping pong table and severely injured his eye.[4]

In his petition,[5] as relevant to this discussion, Bearden brought a negligence action against MVC in Count II alleging that MVC failed to adequately enforce the alcohol and hazing policies contained in its student handbook, and that this failure caused Bearden's injury. Bearden also brought a claim of premises liability against MVC and TKE and certain members and officers of the fraternity (the "Fraternity Defendants") under Count V. After a period of discovery, MVC moved for summary judgment as to both Counts II and V, and after full briefing of the issues, the circuit court took up that motion on November 28, 2017. The circuit court granted partial summary judgment in favor of MVC on both Counts II and V finding that MVC did not owe a duty to Bearden under these facts and MVC did not directly or indirectly cause Bearden's injuries and damages and therefore MVC was not liable for Bearden's damages.

Following the entry of partial summary judgment in favor of MVC, on November 15, 2018, Bearden voluntarily dismissed the cause of action without prejudice. On November 21, 2018, Bearden filed a motion to set aside his voluntary dismissal and to dismiss only TKE. The Court never ruled on this motion, and Bearden filed his notice of

---

[3] Bearden argues on appeal that he "was not pushed at all, but rather fell on his own due to being heavily intoxicated." This assertion is not supported by the record before us. Bearden alleged in his petition he was "pushed by an unknown member of the Fraternity." Furthermore, Bearden admitted in the statements of uncontroverted material facts below that he was "shoved from behind" by an unknown individual, which is binding on him for purposes of the ruling on the motion for summary judgment and our review of that ruling.

[4] The ping pong table had a jagged metal portion which Bearden struck with his eye and face, the record suggests it may have been the post that held the net on the table, but this is unclear.

[5] In his petition, Bearden alleged five counts of negligence against a total of seven defendants. The only counts relevant to this appeal are the allegations against MVC contained in Count II and Count V (against MVC and the Fraternity Defendants). See further discussion of the procedural history and this court's jurisdiction *infra*.

3

appeal on December 20, 2018. The only claims that are subject to this appeal are the claims against MVC.

## Analysis

Bearden raises three points on appeal alleging the circuit court erred in granting summary judgment in favor of MVC because there are genuine issues of material fact as to whether MVC: (1) owed a duty to protect and provide for Bearden's safety, (2) breached that duty, and (3) directly or indirectly caused Bearden's damages. MVC argues this Court lacks jurisdiction over this appeal. Because jurisdiction is a threshold issue, we must first determine if jurisdiction lies with this Court, and only if jurisdiction arises can we address the merits of Bearden's appeal.

## Jurisdiction

Whether we have jurisdiction is a question of law, which we review *de novo*. *Dunkle v. Dunkle*, 158 S.W.3d 823, 827 (Mo. App. E.D. 2005). Appellate courts have jurisdiction to review a judgment only after the trial court issues a "final judgment." Section 512.020(5) RSMo. (2016); *ABB, Inc. v. Securitas Sec. Srvs. USA, Inc.*, 390 S.W.3d 196, 200 (Mo. App. W.D. 2012). If a judgment is not final, we lack jurisdiction to conduct review and must dismiss the appeal. *ABB, Inc.*, 390 S.W.3d at 200. "[A] judgment is final if it disposes of all the issues with respect to all parties and leaves nothing for future determination." *Id*.

Partial summary judgment is not a final judgment if it leaves issues for future determination. *Blackwell v. CSF Props. 2 LLC*, 443 S.W.3d 711, 714 (Mo. App. E.D. 2014) (citing *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 555 (Mo. App. W.D. 2008)).

4

Because the circuit court addressed only Counts II and V, as they applied to MVC, in its partial summary judgment, Counts I, III, and IV were left to future determination. The judgment also failed to address the allegations against the Fraternity Defendants contained in Count V. "[T]he trial court had the discretionary authority to open, amend, reverse, reconsider or vacate the interlocutory [order for partial summary judgment] at any point before a final judgment was entered." *Hart v. Impey*, 382 S.W.3d 918, 921 (Mo. App. S.D. 2012). Therefore, the partial summary judgment entered in this matter was not a final appealable judgment at that point in time, as it was still open to further action by the trial court and there remained other claims against other defendants still pending in the action.

However, Bearden argues his later filed voluntary dismissal converted the partial summary judgment into a final appealable judgment. In *Hart*, the plaintiffs received an interlocutory order granting them certain attorney fees and litigation expenses but later voluntarily dismissed all of their claims against the defendant without prejudice. 382 S.W.3d at 920. The court held that the later filed dismissal, "disposed of the entire action as of the date the dismissal was filed." *Id.* at 921. It was as if that suit had never been filed, and the interlocutory order "must be treated as though it had never been entered." *Id.* In the instant case, Bearden's motion specifically stated that he "voluntarily dismisse[d] the above style [sic] cause without prejudice pursuant to Rule 67.02 of the Missouri Rules of Civil Procedure."

"The language of [plaintiff's] voluntary dismissal leaves no doubt as to [his] intent to dismiss this action without prejudice. There is no mention of specific individual counts or claims, only the action as a whole.' Thus, [plaintiff's] voluntary dismissal was to the

5

action as a whole." *Williams v. S. Union Co.,* 364 S.W.3d 228, 234 (Mo. App. W.D. 2011)(internal citations and quotation marks omitted). The same situation arises here, and because Bearden dismissed the entire *cause* rather than limiting his dismissal to specific parties or specific claims, Bearden's dismissal disposed of the entire action.

Furthermore, Bearden subsequently filed a "Motion to Set Aside and Withdraw Vountary [sic] Dismissal Filed by [Bearden] on November 15, 2018" requesting the court reinstate the suit and dismiss only TKE as a Defendant. However, "a voluntary dismissal is effective on the date it is filed with the court." *Hague v. Trs. of Highlands of Chesterfield*, 431 S.W.3d 504, 508 (Mo. App. W.D. 2014). "The circuit court may take no further steps as to the dismissed action, and any step attempted is viewed a nullity." *Id.* "[T]he circuit court 'loses jurisdiction to enter any subsequent orders regarding the dismissed action[, and *n]o appeal can be taken from the dismissal*." *Id.* (emphasis added). "In addition, the trial court has no power to reinstate the case, even the next day upon a plaintiff's motion." *Id.*

## Conclusion

Because Bearden voluntarily dismissed the entire cause of action without prejudice, there is no final judgment from which he can appeal, and we lack jurisdiction to address the merits of his appeal. *See Wilson v. City of St. Louis*, No. SC97544 (Mo. banc Jan. 14, 2020). We take no position on any preclusive effect of the partial summary judgment in any future or pending litigation.

_____
Gary D. Witt, Judge

All concur

6